# Exhibit B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

```
--------------------------x
ANDREW FLOYD, et al.,        :    Civil Action No.:
                             :    1:26-cv-1399
            Plaintiffs,      :
    versus                   :    Friday, June 12, 2026
                             :    Alexandria, Virginia
DEPARTMENT OF JUSTICE,       :
et al.,                      :    Pages 1-21
            Defendants.      :
--------------------------x
```

        The above-entitled motions hearing was heard before the Honorable Leonie M. Brinkema, United States District Judge. This proceeding commenced at 10:16 a.m.

A P P E A R A N C E S:

FOR THE PLAINTIFFS:    CATHERINE CARROLL, ESQUIRE
                       POOJA BOISTURE, ESQUIRE
                       JYOTI JASRASARIA, ESQUIRE
                       AMAN GEORGE, ESQUIRE
                       ROBIN THURSTON, ESQUIRE
                       SKYE PERRYMAN, ESQUIRE
                       DEMOCRACY FORWARD FOUNDATION
                       P.O. Box 34553
                       Washington, D.C.  20043
                       (202) 448-9090

FOR THE DEFENDANTS:    ANDREW BLOCK, ESQUIRE
                       DEPARTMENT OF JUSTICE
                       OFFICE OF THE ASSOCIATE ATTORNEY GENERAL
                       950 Pennsylvania Avenue, SE
                       Washington, D.C.  20530
                       (202) 372-7565

COURT REPORTER:        STEPHANIE M. AUSTIN, RPR, CRR
                       Official Court Reporter
                       United States District Court
                       401 Courthouse Square
                       Alexandria, Virginia  22314
                       S.AustinReporting@gmail.com

        COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

1

P R O C E E D I N G S

THE DEPUTY CLERK:  Civil Action Number 1:26-cv-1399, Floyd, et al. v. Department of Justice, et al.

Will counsel please note their appearance for the record, first for the plaintiffs.

MS. CARROLL:  Good morning.  May it please the Court. Catherine Carroll from Democracy Forward on behalf of the plaintiffs.  And with me at counsel table this morning is Pooja Boisture, Jyoti Jasrasaria, Aman George, Robin Thurston, and Skye Perryman, all admitted *pro hac vice*.  And Ms. Boisture is prepared to handle the argument this morning.

THE COURT:  Good morning.

MR. BLOCK:  Good morning, Your Honor.  Andrew Block on behalf of the United States defendants.

THE COURT:  You're a brave man, Mr. Block.  You're all there by yourself.

MR. BLOCK:  Yes, Your Honor.

THE COURT:  All right.  And, frankly, you're in the hot seat, so why don't you just come right up to the lectern, and we're going to start off by asking you some questions.

Now, I'm very intrigued by what happened across the river.  I had the ability to read the transcript with Judge Leon, and you were the attorney representing the defendants in that matter, related matter, as well.

So I want to ask you, on page 14 of the transcript,

2

Judge Leon asked you:  Why doesn't the Acting Attorney General simply rescind the May 18 order; right?

MR. BLOCK:  That's right.

THE COURT:  And you responded you didn't know the answer to that question.  That's a fair and proper answer if you don't know.

He then asked you:  Is there a reason for that?  And you said:  I don't know the reason for that.  Okay.

And then later on, you know, he asks you again on page 16:  Why not rescind it?  And you, again, said:  I don't know.

So two days ago, you know, you were asked the question several times by the District Court, and you didn't have an answer.

Do you have an answer to that question now?

MR. BLOCK:  Your Honor, I don't.  I don't have the ability to speak directly to the Attorney General and ask him that question.  I would say, though, that although --

THE COURT:  Well, let me stop you.

You obviously took back to either him or one of your supervisors --

MR. BLOCK:  Yes.

THE COURT:  -- what happened, and of course it's been in the media, and the transcript is now, I assume, available online, or at least it's now part of this record because you

3

filed it late last night.

MR. BLOCK:  Right.

THE COURT:  I cannot believe, given the significance of this case, that you didn't discuss it with somebody of a supervisory role to see whether or not you could come up with an answer.  If you're uncomfortable answering that question, I can respect that.  But you understand there's a huge gap in the record if we don't have an answer to that question.

MR. BLOCK:  Absolutely.  And to just be fully truthful, I don't have a concrete answer for that; all I would be doing would be speculating.

I mean, what I do know and what I can tell you is that the Acting Attorney General, who's the confirmed deputy, so the Number 2, and acting is the Number 1 currently, and the Associate Attorney General, who is the Number 3, have both directed that the fund not move forward.  And you'll notice that the Associate Attorney General's name is on this brief. I've signed this brief.  We've made the representations to the Court.  The Associate Attorney General signed a letter to them.

In fact, I made all of these representations to opposing counsel before they filed their motion that there was no members appointed, that there was no money transferred, that there was no claim process set up.  I represented that to them as an officer of the court before they filed their motion.  I continue to represent that to you and to the public as an

4

officer of this court through the briefs, through the filings.

So, again, I don't have an answer for why that particular paper wasn't rescinded, but I can tell you all of the things that have happened and that the fund is not moving forward.

THE COURT:  Well, the problem is -- I mean, you've argued extensively in the papers in this case, and you argued extensively in front of Judge Leon that the Court does not have jurisdiction because the issue is moot.

MR. BLOCK:  That's true.

THE COURT:  And you base that argument on what you have just said, that is the representations in court pleadings, and also there's been reference to statements that Mr. Blanche made in front of Congress --

MR. BLOCK:  That's correct.

THE COURT:  -- that the fund is not going forward.

But it's been pointed out in both the D.C. case and here that none of those statements, the oral statement before Congress or the written pleadings here, have been made under the penalty of perjury.  They're not -- from an evidentiary standpoint, they don't have sort of the imprimatur of really serious potential sanctions if that is not a truthful representation.  And the problem here is that that means the issue, in my view, is really not moot.  And I'm looking to Fourth Circuit law, and I think --

5

Mr. Glasberg, are you in the courtroom?  You got me reversed many years ago in the *Porter* case.

MR. GLASBERG:  Yes, Judge.

THE COURT:  And the *Porter* case is a case in which Mr. Glasberg sued the Department of Corrections here in Virginia because of the way in which they were housing defendants who were on capital row, as I recall, and as a result of that lawsuit, the Department of Corrections made major changes.  They changed some of the physical structure of the jails, they changed the visitation rules, they did a whole lot of changes.  And they resolved all of the issues in the complaint, but they were unwilling to sign a clear statement that they would never revert back to any of those conditions.

I thought the case was moot, and I dismissed it. Mr. Glasberg took it to the Fourth Circuit, and the Fourth Circuit reversed me in a very, very powerful decision issued in 2017 which has not been reversed or carved back, and it's based primarily on Supreme Court law.  And I'm going to read part of it to you, because I think it's absolutely on point.

So when the mootness issue was raised, that is when the initial remedy which is sought in a lawsuit has been provided, there is a well-recognized exception to the mootness doctrine holding that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.  And that's

6

based on the *City of Mesquite v. Aladdin's Castle*, and it's a U.S. Supreme Court case.

So voluntary cessation of allegedly illegal conduct does not prescribe tribunal of power to hear and determine the case. The Court went on. The voluntary cessation exception "traces to the principle that a party should not be able to evade judicial review or to defeat a judgment by temporarily altering questionable behavior."

Accordingly, the exception seeks to prevent "a manipulative litigant immunizing itself from suit indefinitely, altering its behavior long enough to secure dismissal and then reinstating it immediately after."

To that end, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is" -- and here, these words are incredible -- "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."

And that is from the U.S. Supreme Court case in *Laidlaw*, so we're not even just talking about just the Fourth Circuit.

The Supreme Court has held that a defendant satisfies this heavy burden when, for example, it enters into a "unconditional and irrevocable agreement that prohibits it from returning to the challenged conduct."

And then it goes on to say: Likewise, we have held

7

that a governmental entity's change of policy renders a challenge moot when the government entity "has not asserted its right to enforce the challenged policy at any future time." There's more language, but I think that is the most salient language.

The bottom line is, I don't have in this record the type of uncontestable evidence that this could not be repeated that the Fourth Circuit and the Supreme Court requires when there is this type of cessation activity.  And, unfortunately, there is clear evidence, I think, in the record that has been submitted in terms of the public statements and conduct of the Acting Attorney General in the sense that he's been unwilling to swear to these statements before Congress, and the multiple statements by the President, who has, on numerous occasions, talked about how important this fund is to him, how he feels it should go into effect.  His June 7th statement which was made I believe after our order even went into effect, he said:  So I personally think the weaponization fund is a great idea and so do many other republicans.  You have to get it approved.  If they get it approved, that's great; if they don't get it approved, I would be disappointed.

When the President of the United States says he's going to be disappointed if something doesn't happen, that's a pretty good indicator that there's going to be some incentive or motive to make it happen.  And I'm not going to go -- read

8

through all these other ones, except I guess I should mention the June 3rd comment when the President commented on this Court's order halting the anti-weaponization fund in which he stated "a radical left judge ruled against it, and we'll see how that all works out."

So we have in this record for my satisfaction, beyond any reasonable doubt, that there's enough evidence that we don't have the kind of absolute certainty that's required to guarantee that this fund might not rear its head in some other guise, perhaps, but that it would happen.  And so the mootness argument, in my view, doesn't go anywhere.

You've also raised ripeness.

MR. BLOCK:  Yes.

THE COURT:  And I will tell you, that might not be as strong as the mootness issue, but we've actually had a person send an application to the Court this week.  We sent it back.  We're not accepting applications for the fund.  But, I mean, there are a lot of people out there who think that this fund is up and running, and there are applications there, there's evidence in the -- or representations in the complaint that there is at least one law firm that has gathered up several dozens or hundreds of planned applications.

MR. BLOCK:  And if I -- may I on that point, Your Honor?

THE COURT:  Yes.

9

Stephanie Austin, RPR, CRR USDC/EDVA

MR. BLOCK:  So people may think a lot of different things, and we can't -- I can't control what everybody out there who may want to apply to the fund thinks.  What I can control is telling you that there has been no members appointed to the fund who would then have to set up a process for accepting claims.  And so while people may be lining up to talk to lawyers or trying to submit them through a process, none of those are actual submissions.  And the plaintiffs, by their own admission, have not even attempted to assert or file a claim with the fund.  They just say that they will be categorically barred, which is the definition of a future speculative injury.

And so not even -- notwithstanding the fact that the process isn't even open, and I know there's a lot of media attention and a lot of people trying to figure out how to apply to the fund, they've said that they don't even want to apply to the fund, that they can't even apply to the fund, which is just not enough to get concrete facts before this Court to give rise to justiciability.

THE COURT:  Well, I don't agree with you on that.  I think there's enough here in terms of ripeness to let it go forward.

And there's also, in my view -- we have five different defendants.  We have two individuals, and then we have three entity-type of defendants, the City of New Haven, and then we have Common Cause and the abortion agency.

10

All of them have slightly different bases for standing.  I think some may be stronger than others, but I'm satisfied that we have enough for standing for several of these plaintiffs that also that jurisdictional issue does not give the Court concern.

So this is before the Court on the plaintiffs' motion for a temporary restraining order or a preliminary injunction.  And we allowed -- and just so it's clear what I did with my order two weeks ago, the plaintiffs wanted immediate briefing, and you all wanted more time to brief the issues.  But the concern was that this fund might move forward in that time frame, and so what I did was grant your request.  But to get that extra time, I wanted to make sure everything stayed in place, and that's why --

MR. BLOCK:  And we had offered that to the plaintiffs, and they rejected that offer, just to be clear.

THE COURT:  All right.  Well, that's great, but it didn't happen, so I did the order.

So now I don't know why we would do another TRO.  I think we're at the preliminary injunction stage, unless you have an objection to going that route.

MR. BLOCK:  I don't think so.  I mean, I think the standards are quite the same.

THE COURT:  The standards are basically the same.

So what we have then is we are looking at the *Winter*

11

factors.  Straightforward.  This case is no different from any other case requesting early injunctive relief.

The first issue is, you know, whether there's a likelihood of success on the merits.  And I think there's clearly -- and your main argument has been that the Court doesn't have jurisdiction under either the concepts of standing, ripeness or mootness.  And I don't think any of those three are a problem at this level, that there's enough in this record that certainly establishes that this Court does have jurisdiction, that there is a live, justiciable issue before the Court, and I think that is quite well satisfied.

What I'm intrigued about is the balancing of the equities.  Now, the plaintiffs have argued that they would suffer, and not just they, but if you look at the public as a whole, there's really irreparable injury that could occur if an injunction is not in place.

What I want to ask you is, what injury does either the Department of the Treasury or the Department of Justice -- those are our defendants -- what injury do they face if the Court issues a preliminary injunction at this point?

MR. BLOCK:  Well, Your Honor, I mean, I think there's plenty of case law -- and I'm forgetting the names off the top of my head, and we can -- I think some of this may be in our briefing, but we can certainly follow up later today or next week with some case names.  But injunctions of the executive

12

branch and their ability to conduct lawful basis are presumptively harmful.  And so that would be the first thing.  But --

THE COURT:  You think this is lawful business?  There's a serious issue -- and, you know, we haven't talked about, and I don't really want to get involved in the Florida litigation, but the only reason this fund exists is because it's part of a settlement, which is now seriously under scrutiny by the Court as to whether that is a legitimate lawsuit that resulted in that settlement.

MR. BLOCK:  Your Honor, again, it's our position that there is not -- and I understand that the Court disagrees, but the government's position is that there is no threat of imminent harm because there are so many future contingent actions that would have to happen.  And not only that, there are the statements of the leaders of the Department of Justice saying that the fund is not moving forward.

So it's hard for me to speculate as to what exactly the harm is, but the harm of being restrained on hypotheticals that there's an injunction in place on the executive branch, on cabinet-level officials to not -- or to not do certain things based on a very kind of loose factual record that is very premature is -- is -- has been recognized to be harm.

And I would also point the Court to the *Norton* case, which we cited I think briefly in the Administrative Procedures

13

Act.  It's a Fourth Circuit case talking about what constitutes final agency action.  Almost all of the plaintiffs -- almost all of their claims in this case arise under the APA, and for a Court to have jurisdiction to review anything under the APA, there must be final agency action, which is, again, to include the whole or part of an agency rule, order, license, sanction, relief or the equivalent denial thereof or a failure to act. We're nowhere close to that.  We're nowhere close to that in this case.

And so, again, it's just -- it's -- there's too many what-ifs out there in the future to support the harm and the injury that they are alleging.

THE COURT:  All right.  I'll hear from plaintiffs. And you don't need to repeat the argument -- any arguments on jurisdiction or on the first element of the *Winter* factors. But just for the record, if you'll highlight the irreparable harm if the Court does not grant injunctive relief.

MS. BOISTURE:  As to plaintiffs or as to defendants?

THE COURT:  As to plaintiffs.

MS. BOISTURE:  Yes, Your Honor.

There is irreparable harm that each of our plaintiffs face because of the claims that they have brought here.  So, for example, a couple of our plaintiffs bring both First Amendment injuries and equal protection injuries.  Those are immediately irreparable harm under the case law.  Other

14

plaintiffs bring claims of immediate harm of violence.  Now, those are not just based on a series of hypotheses, as defendants' counsel has represented, those are well-reasoned harms based on what the President has already done and the harm that they're seeing.

So, for example, for plaintiff NAF, they have -- and their members, they have already seen an increase and surge of violence because the President has pardoned those individuals that have violated the law and blocked abortion access at their clinics.

THE COURT:  And the FACE Act is specifically mentioned in these papers as one of the prosecutions under that Act are deemed to be weaponization somehow, and those people may be entitled to reimbursement.

MS. BOISTURE:  That's right, Your Honor.  That's right.

And that similar line of reasoning applies for our client, Common Cause, because the fund has always been broadcast by the President as a fund that will be available to those that were prosecuted for their January 6th crimes.  And we know already that those -- many of those individuals are filing claims from the fund.

I find it interesting that counsel for the defendants says that there should be additional briefing on whether the defendants will suffer any harm.  I don't understand how he can

15

reconcile that with the defendants' position that the fund is not going forward.  If what defendants are saying is true, there is no harm for this Court to enter its preliminary injunction.

THE COURT:  All right.  Thank you.

The other thing I noticed is you cited in your brief the *Planned Parenthood of South Carolina* case, which is a Fourth Circuit case that addressed the issue of standing when there's an issue about whether the state -- in this case it was a state, not the federal government -- was favoring one particular political view.  And it's interesting that the remedies that the Court in that case looked at was either allowing the people who were feeling that they were being discriminated against by not being able to participate in the -- this license plate business, or canceling the whole program.

So one of the options that the Fourth Circuit recognized in this type of situation with First Amendment discrimination is the authority of the Courts to cancel the program.  And so I think again you've -- and I don't recall that the defendant responded at all to the *Planned Parenthood* case in their opposition.

MS. BOISTURE:  I believe you're right, Your Honor.

THE COURT:  Yeah.  Okay.

Well, again, I'm satisfied this record clearly

16

establishes that there would be irreparable injury to the plaintiffs if this fund were allowed to go forward in any respect.

And lastly, so the last factor is -- because the balance of harms tips clearly in favor of the plaintiff, and I don't really see any genuine injury to the defendant if a preliminary injunction were granted.

I think the last thing is the public interest.  And in that respect -- I don't think we have anybody here from the amicus briefs, but I'm going to read into the record the -- some of that brief.  Because here we have both a democratic and republican senator who have filed an amicus brief in the court, and that ends with the following:  "To deliberately deploy public finds, in violation of the Constitution and the laws of the nation, to compensate these perpetrators is to use the machinery of democratic government to subsidize an attack on that government's most fundamental processes.  Congress itself, as both victim and the federal government's sole appropriating authority, has a compelling institutional interest in ensuring that no public fund is converted into a reward for those who laid siege to it.  A scheme deliberately designed to recast insurrectionists -- including those who have perpetrated violence against law enforcement officers -- as victims and legitimate prosecutions as persecution, does not merely rewrite history; it creates incentives for similar conduct in the

17

future, with the explicit encouragement of the officials responsible for administering justice."  And for that reason, the amici have filed their brief.

But the public interest in this case is very, very strong, in my view, and tilts very strongly in favor of, at this point, a preliminary injunction.

The concept that nearly $1.8 billion of U.S. taxpayer dollars would be diverted to favor an extremely small group of people, who have engaged in conduct which a significant number of Americans feel is unacceptable, is problematic.  And as I said, the amicus brief points out so clearly that the separation of powers is absolutely involved in this situation.  And so for all of these reasons, I'm granting your motion for preliminary injunction.

Now, if the government truly means what it means in terms of this fund is over and this attempt to use taxpayer dollars to reward certain types of people for their political activities, I'm going to give you a week to see if you can come up with an agreement.  If, in fact -- because as I understand the plaintiffs' position, if you get a declaration, a clear unambiguous declaration under the penalty of perjury that would have to be signed off by the Acting Attorney General and the Secretary of the Treasury, because they are the two defendants, that you would dismiss this case; is that correct?

MS. BOISTURE:  Your Honor, we would -- we wouldn't be

18

moving for a preliminary injunction anymore. I do need to confer with our clients as to whether or not we would actually fully dismiss the case at that point.

THE COURT: All right. Now, I thought at least -- and, again, I know you're not related to the case in D.C. I thought that that kind of a clear declaration would satisfy that plaintiff, but you think there's something else you would want besides just a -- as I said, a clear unambiguous declaration would not be sufficient?

MS. BOISTURE: Your Honor, the reason being that there's this other document in play that has also put the fund in motion, that's the settlement agreement at issue in *Trump v. IRS*. And so, yes, while a signed sworn testimony would go most, or at least a lot of the way, I think that's something we need to figure out as to that missing element of the *Trump v. IRS* settlement.

THE COURT: Well, that issue I'm not touching because it's before another judge in another district, whether or not that settlement is actually a valid legal settlement coming out of any kind of legitimate legal activity in that court, or whether it could -- so, I mean, I don't think that's appropriate, and that's beyond the scope of what this Court, I think, has before it; all right?

MS. BOISTURE: Sure, Your Honor. We have always seen those two documents as interrelated, given that the settlement

19

agreement actually prompted the Associate -- I'm sorry, the Acting Attorney General to issue that order on May 19th.

I think if we're trying to think through our options here -- and if you don't mind, I just might confer to make sure my co-counsel agree. But we will assess, both internally and with our clients, about whether or not the case as a whole can be dismissed. We think that the Court's -- the order that you sound like you'll be making in about a week's time to come to an agreement with the government is something we will actively engage in and wholeheartedly engage in with the government.

THE COURT: Let me do this, because, again, although it's gotten some degree of public interest, it's still a civil case before this Court; it's not going to be treated any differently.

So what's going to happen is, if, in that one-week time period, the government chooses not to file, you know, that kind of a declaration -- and even if you don't accept it, I might find it sufficient at that point to moot the case. But if that's not done, then I will issue our standard scheduling order. So you don't need expedited discovery; our orders are fast enough. All right. I will require the government to file a response to the lawsuit within 30 days of that time period. All right. So you'll get a subsequent order in about a week.

But I'll issue an order today that will enter a preliminary injunction. All right. And that's going to be in

20

Stephanie Austin, RPR, CRR USDC/EDVA

place then until the next step.  The next step, I don't know when that will be.  But it's in step until the case either settles or there's a dispositive motion of some kind that might resolve things; all right?

MS. BOISTURE:  Thank you, Your Honor.

THE COURT:  All right.  Did you have something you wanted to say?

MR. BLOCK:  We did raise in our brief --

THE COURT:  At the lectern, yeah.

MR. BLOCK:  Apologies, Your Honor.

We did raise in our brief the prospect of a bond, and I wanted to see if the Court wanted to address that.

THE COURT:  Since I don't find any injury or harm that's going to result to the defendants as a result of putting a preliminary injunction in place, I'm not composing any bond.

MR. BLOCK:  Yes, Your Honor.

THE COURT:  All right.  We'll recess court for the day.

(Proceedings adjourned at 10:43 a.m.)

-----------------------------------

I certify that the foregoing is a true and accurate transcription of my stenographic notes.

*Stephanie Austin*

Stephanie M. Austin, RPR, CRR

21