**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,<br><br>    Plaintiff,<br><br>    v.<br><br>U.S. DEPARTMENT OF JUSTICE, *et al.*,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Case No. 26-1789 (RJL)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION
(June 23, 2026) [Dkt. #10]

On May 18, 2026, the Department of Justice ("DOJ") announced the creation of a

$1.776 billion Anti-Weaponization Fund ("the Fund") to compensate individuals who were

subjected to improper government targeting or "weaponization." Citizens for

Responsibility and Ethics in Washington ("CREW" or "plaintiff"), a non-profit

government watchdog group, quickly filed suit to halt the Fund. After CREW sued,

however, Acting Attorney General Todd Blanche informed Congress that the DOJ would

*not* proceed with the Fund, a position defendants have since reiterated in both court filings

and open court. Plaintiff has provided no clear evidence to the contrary.

Applying our Circuit's presumption-of-regularity precedent to these statements by

Government officials, and in the absence of any evidence to the contrary, I must take the

Government at its word and thus find this case is likely moot. CREW is not suffering any

1

injuries from the Fund, and there is no longer any effective relief I can provide.  As such, and for the reasons set forth below, I will **DENY** plaintiff's motion for a stay under 5 U.S.C. § 705 and for a preliminary injunction because the case is moot or, in the alternative, not ripe.

**BACKGROUND**

**I.      Establishment of the Anti-Weaponization Fund**

On January 29, 2026, Donald J. Trump, together with Donald Trump Jr., Eric Trump, and the Trump Organization (collectively, the "Trump plaintiffs"), initiated a civil action against the Internal Revenue Service ("IRS") and the Department of the Treasury ("Treasury").  *See* Mem. in Supp. of Pl.'s Mot. for TRO or Prelim. Inj. ("Pl.'s Br.") [Dkt. #10-1] at 4.  The Trump plaintiffs sought damages related to the alleged unlawful disclosure of President Trump's tax returns by a government contractor in 2019.  *See Trump v. IRS*, No. 26-cv-20609 (S.D. Fla. Jan. 26, 2026).

On May 18, 2026, the DOJ entered into a settlement agreement with the Trump plaintiffs.  *See* Ex. E to Pl.'s Mot. for TRO or Prelim. Inj. ("Settlement Agreement") [Dkt. #10-7].  In addition to settling the claims between the parties, the Settlement Agreement established the Anti-Weaponization Fund to "provide a systemic process to hear and redress claims of others who, like Plaintiffs, state that they incurred harm from similar Lawfare and Weaponization."  *Id.* at 2.  The Settlement Agreement "may be modified only with the written agreement of the Parties."  *Id.* at 4.  On the same date, Acting Attorney General Todd Blanche issued an order "establishing funding and any other relevant requirements for the Fund."  *See* Ex. F to Pl.'s Mot. for TRO or Prelim. Inj. ("May 18,

2

2026 Order") [Dkt. #10-8] at 1.

## II.   CREW's Lawsuit

On May 22, 2026, CREW filed a complaint against the DOJ, Acting Attorney General Todd Blanche, Treasury, Treasury Secretary Scott Bessent, the IRS, IRS Chief Executive Officer Frank Bisignano, the Fund, and J. Does 1–5 (together, "defendants" or "the Government"). *See* Compl. [Dkt. #1]. CREW asserts numerous claims against defendants, including that the May 18, 2026 Order violates separation of powers, fails to follow the Administrative Procedure Act's ("APA") procedural requirements, exceeds statutory authority, contravenes First Amendment rights, and is arbitrary and capricious. *See id.*

Citing defendants' inability to provide any "assurances that would mitigate the threat of irreparable harm," CREW filed a motion for a TRO, or in the alternative, a stay under 5 U.S.C. § 705 and a preliminary injunction on May 28, 2026. *See* Pl.'s Mot. for TRO or Prelim. Inj. ("Pl.'s Mot.") [Dkt. #10] at 2.

## III.   Remarks by Acting Attorney General Todd Blanche

While CREW's motion was pending, on June 2, 2026, Acting Attorney General Todd Blanche appeared before the House Appropriations Committee for an oversight hearing. *See* Defs.' Response to Pl.'s Mot. for TRO or Prelim. Inj. ("Defs.' Opp'n") [Dkt. #15] at 9. During the hearing, representatives questioned Blanche on the status of the Fund. *Id.* Blanche stated: "We are not moving forward with the Fund, period." *Id.* When asked to clarify whether the Fund was "not moving forward ever," Blanche responded, "correct." *Id.*

A representative then asked Blanche whether he would "sign and release documents reversing the DOJ's position on the Fund," to which Blanche responded, "I'm not sure what that means to sign documents reversing. There's nothing to reverse." Reply in Supp. of Pl.'s Mot. for TRO or Prelim. Inj. ("Pl.'s Reply") [Dkt. #16] at 3–4. In a later exchange, when asked whether he would "issue a new memo in writing rescinding that May 18th memo," Blanche stated, "I'm not committing to putting anything in writing." *Id.* at 4. The following day, on June 3, 2026, a reporter asked President Trump if he had "dropped" the Fund, to which he responded, "[n]o. A court ruled against it."[1] *Id.*

## IV.    TRO Hearing

On June 5, 2026, the Government filed its opposition to CREW's motion, arguing that in light of the Acting Attorney General's remarks, CREW's claims are no longer justiciable. *See* Defs.' Opp'n at 10–18. CREW filed its reply on June 9, 2026. *See* Pl.'s Reply.

On June 10, 2026, I held a hearing on the TRO. *See* Tr. of TRO Hr'g ("Hr'g Tr.") [Dkt. #17]. "[E]xpressly relying on [the Government's] representations" that the Fund is not moving forward, *id.* at 20:8–9, I denied the motion for a TRO because "the case appears to be moot," *id.* at 19:17–18. CREW's request for a stay under 5 U.S.C. § 705 and preliminary injunction remains outstanding and is now ripe for decision.

---

[1] President Trump was referring to Judge Leonie Brinkema's order in *Floyd v. DOJ*, 1:26-cv-1399-LMB/IDD (E.D. Va.), a case similarly addressing the legality of the Anti-Weaponization Fund. In that case, Judge Brinkema enjoined the Fund from operating while plaintiffs' motion for a TRO was pending. *See* Minute Order, *Floyd v. DOJ*, 1:26-cv-1399-LMB/IDD (E.D. Va. May 29, 2026).

4

## LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, the movant "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. If the government is the opposing party, "[t]he balance-of-equities and public-interest factors merge." *Global Health Council v. Trump*, 153 F.4th 1, 12 (D.C. Cir. 2025).

Section 705 of the APA authorizes a reviewing court to stay "the effective date of an agency action" pending judicial review "to the extent necessary to prevent irreparable injury." 5 U.S.C. § 705. The factors governing the issuance of a stay are the same as those that govern the grant of a preliminary injunction, and as such the court may evaluate the two under the same framework. *See Dist. of Columbia v. U.S. Dep't of Agric.*, 444 F. Supp. 3d 1, 15 (D.D.C. 2020).

## ANALYSIS

Before I consider the merits of CREW's request, however, I have an independent obligation to ensure this case falls within the bounds of Article III of the Constitution. *See TikTok Inc. v. Garland*, 122 F.4th 930, 947 (D.C. Cir. 2024). To give meaning to Article III's case-or-controversy requirement, "the courts have developed a series of principles termed 'justiciability doctrines,'" among which are "mootness" and "ripeness." *Nat'l Pub. Radio, Inc. v. Trump*, 2026 WL 877434, at *11 (D.D.C. Mar. 31, 2026) (quoting *Nat'l*

5

*Treasury Emps. Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996)).

In this case, I find CREW's motion can be resolved under either doctrine. The Government's decision not to proceed with the challenged Fund "leav[es] nothing for the Court to remedy (mootness)," and to the extent CREW's claims depend on the highly uncertain implementation of the Fund, they "are premised on future contingencies and thus unfit for judicial review (ripeness)." *United Motorcoach Ass'n, Inc. v. Welbes*, 614 F. Supp. 2d 1, 8 (D.D.C. 2009). I will address each doctrine in turn.

## I. Mootness

"[T]he initial burden of proving mootness lies with the party claiming it, whereas the opposing party bears the burden of showing that an exception to mootness applies." *Planned Parenthood of Wis., Inc. v. Azar*, 942 F.3d. 512, 516 (D.C. Cir. 2019). Generally, "a case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969) (internal quotation marks omitted). Importantly, "[c]hanging circumstances can moot a previously valid claim." *Mejia-Mejia v. U.S. Immigr. & Customs Enf't*, 2019 WL 4707150, at *6 (D.D.C. Sept. 26, 2019).

### a. Voluntary Cessation

Once a party has satisfied the "initial burden of proving mootness," *Planned Parenthood*, 942 F.3d at 516, exceptions to mootness may mean the case is still justiciable. Here, because the Government has "voluntarily cease[d] the challenged activity," *Pub. Citizen v. Fed. Energy Regul. Comm'n*, 92 F.4th 1124, 1128 (D.C. Cir. 2024), the Government must show that it is "absolutely clear the allegedly wrongful behavior could

6

not reasonably be expected to recur" for the case to be moot. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000).

Specifically, the party asserting mootness bears the burden of showing that "(i) there is no reasonable expectation that the alleged violation will recur, and (ii) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Citizens for Resp. & Ethics in Wash. v. Wheeler*, 352 F. Supp. 3d 1, 13 (D.D.C. 2019). This is a "heavy" burden, though courts in this Circuit have "consistently recognized that where the defendant is a government actor — and not a private litigant — there is less concern about the recurrence of objectionable behavior." *Id.* For the following reasons, I find that the Government has satisfied its burden on both fronts.

### i.  No Reasonable Expectation of Recurrence

First, I find that the Government has satisfied its "heavy" burden of making it "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 190. Indeed, the Acting Attorney General's statements to Congress and the Government's representations on the record in this case have been unequivocal.

During the June 2, 2026 congressional hearing, Acting Attorney General Todd Blanche stated: "We are not moving forward with the Fund, period." Defs.' Opp'n at 9.

The Government has repeated those assurances in court filings,[2] and at the TRO hearing, where counsel reiterated, "the Acting Attorney General and the Associate Attorney General have stated in . . . official statements that the [F]und is not moving forward." Hr'g Tr. at 14:24–25, 15:1–2. When asked why the DOJ would not rescind the Fund in writing, counsel for the Government responded, "[b]ecause it's the department's position that we don't need to do that when there's not a live or justiciable controversy." *Id.* at 19:4–6; *see Porup v. Cent. Intelligence Agency*, 997 F.3d 1224, 1232–33 (D.C. Cir. 2021) (collecting cases that show the court may credit "representations of counsel" at "oral argument" when assessing mootness).

"Although mere profession that defendants have no intention to revive challenged practices is not alone sufficient to moot a case, it is an important factor to be considered in determining whether a live controversy exists." *Am. Fed'n of Gov't Emp.'s, AFL-CIO v. Brown*, 866 F. Supp 16, 19 (D.D.C. 1994). Indeed, the Government's representations here are "unambiguous." *Kupperman v. U.S. House of Representatives*, 436 F. Supp. 3d 186, 192–193 (D.D.C. 2019). They are far removed from the more circumspect or conditional assurances in cases where courts have *declined* to find mootness based on Government declarations. *See, e.g., Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 242 (2024) (finding the Government's "sparse declaration" that it would not target plaintiff based on

---

[2] In its opposition, the Government repeatedly assures this Court that there are no plans to move forward with the Fund. *See* Defs.' Opp'n at 1 (noting the Fund is "now not going forward" and "it will not" continue); *id.* at 11 (claiming the "Acting Attorney General's statements to Congress make it absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur" (internal quotation marks omitted)); *id.* at 14 (noting that information about the Fund's procedures "indisputably does not (and now will not) exist"); *id.* at 16 (stating that "[t]here are, and will not be, any such records" related to the Fund's operation).

the "currently available information" to be insufficient to meet the voluntary cessation threshold). In any event, the defendants here were duly warned at the TRO hearing not to "play possum" with this Court! Hr'g Tr. at 20:11–12.

Ultimately, I consider the Government's representations in light of the "presumption of regularity" that attaches to the official acts of public officers, which requires courts to presume, "in the absence of clear evidence to the contrary . . . that they have properly discharged their official duties." *People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 918 F.3d 151, 157 (D.C. Cir. 2019). That presumption applies here, where counsel for the Government has repeatedly made clear, unconditional representations in its filings and before the Court regarding Government policy. *See id.* ("Without evidence to the contrary, we assume that formally announced changes to official governmental policy are not mere litigation posturing." (quoting *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009))). CREW has not presented any clear evidence that the Fund is proceeding despite the Acting Attorney General's statements, or that the Government has misrepresented the status of the Fund. Under these circumstances, I must "take the government at its word and will hold it to it." *Wheaton Coll. v. Sebelius*, 703 F.3d 551, 552 (D.C. Cir. 2012).

CREW contends that President Trump's June 3, 2026 statements "create a substantial risk" that the Administration "has not abandoned the Fund." Pl.'s Reply at 7. Indeed, the President remained supportive of the Fund after the Acting Attorney General's remarks to Congress, noting he still believes individuals "should be reimbursed for a crooked government." *Id.* at 4. While I acknowledge the possible inconsistency, I do not

find that the President's off-hand remarks to the media undercut the weighty and unequivocal statements that the Government has made to this Court—as officers of the Court and under threat of contempt—and before Congress.

### ii.  Complete and Irrevocable Eradication of Effects

CREW also argues that Acting Attorney General Blanche's "non-binding remarks" do not constitute a "legally valid rescission of the Fund's charter documents," Pl.'s Reply at 6, and thus fail to "completely and irrevocably eradicat[e] the effects of the Fund's creation," *id.* at 7 (internal quotation marks omitted).  According to CREW, because the Settlement Agreement and the May 18, 2026 Order are an "integrated legal instrument" that may only be modified through "written agreement of the parties," the case remains live because the documents continue to exist. *Id.* at 6.

CREW's focus on the Settlement Agreement and the May 18, 2026 Order is misplaced.  CREW insists that "[t]he continued existence of this *injury-causing* agreement is sufficient reason to reject Defendants' mootness claim." *Id.* at 8 (emphasis added).  But CREW has not shown how the continued existence of the Settlement Agreement and the May 18, 2026 Order in the abstract cause it any ongoing injury for this Court to "eradicate." *See Citizens for Resp. & Ethics in Wash.*, 352 F. Supp. 3d at 14 ("In the cases in which the effects of an injury were not eradicated, and thus kept the controversy alive, 'some tangible, concrete effect, traceable to the injury, and curable by the relief demanded, clearly remained.'" (quoting *Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011, 1019 (D.C. Cir. 1991)).

Here, CREW's asserted informational injury is prospective, and depends on the

10

creation (and alleged withholding) of records subject to the Judgment Fund statute, the

Federal Records Act ("FRA"), and the Freedom of Information Act ("FOIA").[3] *See* Pl.'s

Br. at 10–14. Where the Government has clearly represented that "[t]here are, and will not

be, any such records," that prospective injury dissipates. Defs.' Opp'n at 16; *see Chang*,

2023 WL 8697831, at *16 (D.D.C. Dec. 15, 2023) (holding plaintiff's claims for

*prospective* injunctive relief under a discontinued policy were moot, while analyzing

claims for retrospective relief on the merits).

Relatedly, there is no longer any effective relief the Court may provide. Mootness

arises when, among other circumstances, "the court can provide no effective remedy

because a party has already obtained all the relief that [it has] has sought." *Schmidt v.

United States*, 749 F.3d 1064, 1068 (D.C. Cir. 2014) (internal quotation marks omitted).

Ordering the Government to preserve or produce records that it represents are not being

created would be an injunction without practical effect. *See, e.g., Mass. Coal. for Immigr.

Reform v. U.S. Dep't of Homeland Sec.*, 800 F. Supp. 3d 134, 140 (D.D.C. 2025) (finding

that although plaintiff's "victory came through political channels rather than the judiciary,

---

[3] CREW also asserts injuries based on the loss of notice-and-comment opportunities and alleged First Amendment harms. *See* Pl.'s Br. at 42–44. Neither satisfies the requirement that a plaintiff seeking prospective relief must demonstrate that it is "immediately in danger of sustaining some direct injury as the result of the challenged official conduct." *Chang v. United States*, 2023 WL 8697831, at *11 (D.D.C. Dec. 15, 2023) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983)). On the notice-and-comment theory, CREW asserts a "right to have its comments on the May 18 Order considered before its concrete interests are irreparably harmed by Defendants' impending transfer of nearly $1.8 billion to the Fund." Pl.'s Br. at 42. Without a live, imminent action to which such procedures would attach, the asserted procedural injury is, at this point, hypothetical. The First Amendment injury fares no better. CREW claims that "[b]y channeling unpopular settlements through their shadowy Fund, Defendants preclude CREW and others from engaging in timely criticism." *Id.* at 43. Yet CREW is not suffering from a present or imminent restraint on its speech, and there is no cognizable chilling effect stemming from a now defunct program.

11

[he] has won," and now "has the outcome he wanted all along").

The "effects" analysis might differ if this case involved a regulatory scheme that, by its mere existence, chilled conduct through the threat of enforcement. *Cf. Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, 775 F. Supp. 3d 100, 120 (D.D.C. 2025) (finding the rescission of a policy memorandum insufficient where, among other factors, there was a "mountain of evidence . . . that even the threat of [the challenged conduct] was enough to send countless organizations into complete disarray"). Here, however, CREW is not subject to any ongoing legal obligations created by the Settlement Agreement and the May 18, 2026 Order. That distinction undercuts CREW's contention that the mere existence of the documents, without more, is sufficient to defeat mootness.

## II.     Ripeness

In the alternative, this dispute is not ripe for judicial review. The ripeness doctrine is "designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies." *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 440 F.3d 459, 463 (D.C. Cir. 2006) (internal quotation marks omitted). To assess whether a case is ripe, I must consider "(1) the fitness of the issues for judicial decision" and "(2) the hardship to the parties of withholding court consideration." *Cobell v. Jewell*, 802 F. 3d 12, 21 (D.C. Cir. 2015).

### a.  Fitness for Judicial Decision

The "fitness" inquiry evaluates "whether the issue is purely legal, whether consideration of the issue would benefit from a more concrete setting, and whether the agency's decision is sufficiently final." *Nat'l Ass'n of Home Builders*, 440 F.3d at 463–

64. However, "[e]ven if a challenged action is final and the issues purely legal, a case is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated or may not occur at all." *Isenbarger v. Farmer*, 463 F. Supp. 2d 13, 19 (D.D.C. 2006).

CREW characterizes this case as a "concrete legal dispute," alleging that "the Fund's charter documents are *facially inconsistent* with the Constitution and multiple federal statutes." Pl.'s Reply at 11–12. But the record here confirms that, at present, the Fund is *at most* a prospective, undefined framework. Courts in this Circuit routinely hold that such forward-looking challenges to tentative policies are unfit for review, particularly where the alleged harms depend on future discretionary decisions. *See, e.g., Friends of Animals v. Pendley*, 523 F. Supp. 3d 39, 58–59 (D.D.C. 2021) (finding challenges to an agency's "Gather Plan" were likely unripe where the alleged harms had not "yet [been] carried out" or "even scheduled," and depended on uncertain implementation decisions); *Friends of Animals v. U.S. Bureau of Land Mgmt.*, 514 F. Supp. 3d 290, 305 (D.D.C. 2021) (same).

Prudential considerations counsel against adjudication where a plaintiff seeks review of an order that leaves "significant uncertainty about how, and to what extent, the articulated policy would be implemented." *League of United Latin Am. Citizens v. Exec. Off. of the President*, 818 F. Supp. 3d 34, 79 (D.D.C. 2026) (citing *Trump v. New York*, 592 U.S. 125, 132 (2020)); *Common Cause v. Trump*, 506 F. Supp. 3d 39, 47–53 (D.D.C. 2020)). To say the least, this case presents the paradigmatic example of a dispute with "significant uncertainty" about whether the challenged framework will be implemented at

all, and if so, in what form, on what timeline, and with what concrete consequences to the parties!

### b. Hardship to the Parties

Finally, under the hardship prong, I must determine whether the challenged administrative action is likely to have a "direct and immediate effect" on the "primary conduct" of the plaintiff. *Pendley*, 523 F. Supp. at 63. "The focus of this hardship inquiry, however, 'is not whether [the parties] have suffered any direct hardship, but rather whether *postponing* judicial review would impose an undue burden on them or would benefit the court." *Id.* (quoting *Harris v. F.A.A.*, 353 F.3d 1006, 1012 (D.C. Cir. 2004)).

Here, postponing review imposes no cognizable hardship on CREW. While CREW may theoretically challenge "unlawful[] limit[s]" on its "access to statutorily required information in the future," Pl.'s Reply at 12, that prospective harm is by no means "immediate, direct, and significant," *Friends of Animals v. Haugrud*, 236 F. Supp. 3d 131, 135 (D.D.C. 2017) (citing *Cronin v. FAA*, 73 F.3d 1126, 1133 (D.C. Cir. 1996)). Indeed, as courts in this Circuit have made clear, "[t]he hardship must be such that without judicial review, a party would have to make significant changes in its everyday business practices—such as costly changes to comply with a regulation—or face the imposition of strong sanctions." *Asante v. Azar*, 436 F. Supp. 3d 215, 226 (D.D.C. 2020). No such circumstances are present here.

14

## CONCLUSION

Based upon the Government's considered representations to this Court, I find the case is likely no longer justiciable. For all the reasons stated above, it is hereby **ORDERED** that CREW's Motion for a Stay under 5 U.S.C. § 705 and Preliminary Injunction [Dkt. #10] is **DENIED**. An accompanying Order will issue contemporaneously with this opinion.

RICHARD J. LEON
United States District Judge

15